## E. E. LANTZ v. VERMONT L. INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued April 10, 1890—Re-arg't ordered May 5, 1890.
Re-argued January 9, 1891—Decided January 26, 1891.
[To be reported.]

(a) A life insurance policy stipulated for the payment of quarterly premiums by the assured, providing that if they should not be paid on the dates named and in the lifetime of the assured, the policy should cease and determine, and that the acceptance of a premium after maturity should not be a waiver of payment of any future premiums at maturity.

(b) It was further provided that no persons, except the president and secretary, acting together, were authorized to make, alter, or discharge contracts, or waive forfeitures. A general agent of the company frequently received and practically had authority to receive premiums after maturity, provided the assured was in good health at the time thereof:

1. In the absence of evidence that the company authorized him thereto, the agent had no power to bind it by a promise to accept an already overdue premium on a future day, regardless of the health of the assured or of his death before that time; and the agent's acceptance of prior premiums after maturity, the assured then being in good health, gave the latter no right to rely on such promise.

2. The consequence of the default of the assured in not paying said premium at maturity, was that the policy thereupon ceased to bind the company and protect the assured, without any act or declaration on the part of the former; and, while it might be restored to life by subsequent payment and acceptance, this in effect would be a new insurance under the former policy.

3. At all events, as a lapsed policy can be restored to life, so far as the assured is concerned, only by actual payment and acceptance of the

premium, or by a contract based upon a sufficient consideration, the promise of the agent, being made when the assured was already in default, and without consideration, was not binding upon the company.

4. The assured died before the date at which the agent promised to accept the premium, and it was tendered by his legal representatives, after his death but within the date specified. The company, in such case, was not bound to accept the tender, and was not liable on the policy: Universal Ins. Co. v. Block, 109 Pa. 535; Lebanon Ins. Co. v. Hoover, 113 Pa. 591, distinguished.

Argued before PAXSON, C. J., STERRETT, WILLIAMS, MC-COLLUM and MITCHELL, JJ.; re-argued before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 288 January Term 1890, Sup. Ct.; court below, No. 41 March Term 1889, C. P. No. 1.

On February 26, 1889, Evalina E. Lantz brought assumpsit against the Vermont Life Insurance Company, upon a policy issued by the defendant dated May 19, 1883, insuring the life of Simeon B. Lantz, in the sum of $3,000, for the benefit of the plaintiff. Issue.

The policy specified, as the consideration of the insurance, the sum of $15.72, paid to the defendant by the insured, Simeon B. Lantz, and the like sum to be paid " by said insured on or before the nineteenth days of May, August, November and February, in every year during the continuance of this policy," and contained the following provisions:

" It is a further condition of this policy, that in case the premium shall not be paid on or before the time herein mentioned for the payment of the same, and in the lifetime of the insured, or if any note given for premium shall not be paid when due, then and in every such case the said company shall not be liable for the payment of the sum insured, or any part thereof, and this policy shall cease and determine: Provided, however, that in case three or more annual premiums have been paid, the holder shall, upon surrender of this policy within six months after date of default in payment of premium, be entitled to a paid-up policy for such amounts as are given on the margin hereof, . . . . ."

" In case of the acceptance of the premium named herein, after the time mentioned, the same shall not be deemed or con-

strued as a waiver, or as any evidence of an agreement to waive the payment of any future premium at the time the same shall, by the terms of this policy, become payable. In case this policy becomes null and void, the holder of the same will not be entitled to a return of any part of the premium paid hereon, except as hereinbefore provided. No persons, except the president and secretary acting together, are authorized to make, alter, or discharge contracts, or waive forfeitures; and no receipt for premiums shall be valid unless executed by the president and secretary."

At the trial on October 10, 1889, the plaintiff, having shown that Simeon B. Lantz was in good health on March 2, 1888, but was stricken with apoplexy on the following day, and died March 5, 1888, called Menno S. Lantz, a brother of the deceased, who testified as follows:

" On the 2d of March I went to the office of the defendant company, No. 426 Walnut street, at the request of my brother, to see about the payment of his premium. I went there because I also had a policy of insurance that was past due, and I went to ask whether payment of my policy would be accepted the following week. Then, after I had arranged that with them, I said to them that my brother had asked me to say to them that he would be down on Tuesday, which would have been the sixth, to pay his policy also, and the agent voluntarily made the statement that he made out his monthly report on the tenth of the month, and if it was paid by the ninth it would be all right,—the payment of his and mine. When I returned, I told my brother exactly what was said to me by Mr. Ryer; if the policy was paid by Friday, it would be all right. Mr. Ryer was the general agent. There were no conditions attached to that promise to accept the money by the ninth. It was not the habit of the company with me to require strict payment. My impression in the matter is that they were rather lenient. They allowed me to pay at several times when the premium was past due."

The premium upon the policy in suit, referred to in this testimony, was the one falling due February 19, 1888.

The plaintiff showed further that on March 6, 1888, the over-due premium was tendered to Ryer, the defendant's agent, who refused to accept it. The plaintiff also put in evidence

receipts for the premiums becoming due in May, August and November, 1887, from which it appeared that each of said premiums was paid to and accepted by the defendant company after having been for some time overdue.

The appellant's " History of the Case " stated that each of these receipts had printed on it a notice to the same effect as the clauses of the policy relating to waivers of its provisions, discharges of forfeitures incurred, etc. ; but the receipts were not found printed in the paper-books. The defendant admitted that these three premiums had been paid and received after maturity, and that Ryer was in the habit of receiving premiums and delivering renewal receipts after maturity, provided the insured was in good health at the time of the payment, and practically had authority so to do; and that had Simeon B. Lantz been alive and in good health on March 9, 1888, and had tendered payment of his premium on that day, it would have been received.

The testimony for the plaintiff being closed, the defendant called Ryer and his clerk, who testified to the effect, in substance, that Ryer did not, on March 2, 1888, make an unconditional promise to accept the premium on March 9th, but said that he would do so provided he should be then satisfied by a health certificate or a personal inspection, that S. B. Lantz was alive and well, and that in the meantime the insured would be carrying this risk himself. Ryer testified further, that the defendant company, after the death of S. B. Lantz, sent out a check for $186, as the paid-up value of his policy, and that a tender of this check was made by the witness, acceptance of which was refused.

The testimony being closed, the court, BIDDLE, J., charged the jury in part as follows :

Now, the defence to this is of a two-fold character. First, it appears by the terms of this policy that no person except the president and secretary, acting together, are authorized to make, alter, or discharge contracts, or waive forfeitures, and no receipts for premiums shall be valid unless executed by the secretary ; so that the company denies that their general superintendent, under this provision, had any authority to make, discharge, or waive forfeitures. Therefore, if that were true,

Charge of Court below.

the general superintendent had no right to waive a forfeiture when the man came there in person, in good health, to pay it ; that was certainly, in strictness, contrary to this provision, but he does not doubt for a moment that he would have done that very thing.

[Therefore, I think the question arises, and it is for you to say, in this case, whether this general superintendent, residing here in Philadelphia, with his principal in Vermont, and in the constant habit of doing this very thing,—because we find a number of receipts where he did receive the money subsequent to the time fixed, and it is testified to in this case that he certainly agreed to do it, and had done it in the case of Mr. Lantz, his brother, so that, if that rule was to be enforced as it is written, he would have no right to do this thing which he was in the habit of doing, and that, therefore, it is a question for you to say whether he had any authority ; whether the company, having permitted him to do this thing constantly and knowingly, had not authorized him,—the secretary and president had not authorized him,—to perform the acts that he was doing.] [1]

Therefore, if you should think that he had a right, in spite of that special provision, the second question would be, what it was that he really did in this case ?

Now, as I say, on the one hand the plaintiff alleges that the superintendent said it would be all right if this money was paid on the ninth, and he said he understood that he was to be protected up to the ninth. On the other hand, the general agent, with whom this agreement was made and the conversation occurred, said that the agreement was that if this man was alive and in good health on the ninth he would not forfeit his policy ; that what he meant was that " you have already forfeited your policy by not paying on the nineteenth ; now, if you continue in good health up to the ninth, why I do not enforce that penalty." That, he contends, was what he meant, and what he said. . . . .

It seems to me that, certainly, the principal question in this case is as to what did occur. The general superintendent claims that this question in regard to health was not as to the condition of his health at the time the application for the extension was made, but that it was that the man was in good health on

the ninth, when he came to make the payment. That is a question, of course, for you. If you believe that that was the arrangement under which he agreed not to enforce the forfeiture, that he was to be in good health on the ninth, why, the plaintiff would have no title to recover. If, on the other hand, the agent said only it was all right, which induced them to believe it was only necessary to pay the money at that time, it is a question for you to say whether he is not protected, there being no fraud about it, which is not alleged here. . . . .

The plaintiff requests the court to charge :

4. If the jury believe from the evidence that the conduct of the company defendant, in its dealings with the insured, was such as to induce him to believe that so much of the contract of insurance as provided for a forfeiture would not be enforced if payment were made by the ninth day of March, 1888, and that the insured acted upon that belief, the company should not be permitted to allege a forfeiture.

Answer : Affirmed.[2]

5. If the jury find from the evidence that the company defendant was in the habit of sending premium receipts on this policy to its general agent at Philadelphia, duly signed by the president and secretary of the company, leaving their use subject to the judgment of that agent, and the latter received the premiums from the insured, without objection, after they became due, and issued the receipts therefor, and the company defendant and its manging agents, or officers, received from its agent and retained the premiums so paid, the insured had a right to believe that the company waived a strict compliance, and the jury may find there was a waiver of the forfeiture clause ; and, if the jury believe that on the second of March the insured was assured by the general agent that if the premium due the 19th February were paid on or before the ninth day of March the policy would be all right, then the jury may find that the policy remained in full force and effect, and the company are liable thereon, notwithstanding the insured died on the 5th March.

Answer : Affirmed.[3]

The court is requested by defendant to charge :

1. It being admitted that the premium which, by the terms of the policy, came due on the 19th February, 1888, was not

Charge of Court below.

paid, the policy, on account of said non-payment of premium, ceased and determined, and the defendant is not liable for the payment of the sum insured.

Answer: That point I affirm, but I do not mean that in this case the failure to pay the premium on February 19, 1887, obliges you to give a verdict for defendant. I do not understand that.[4]

3. Even if the jury should find that Edward C. Ryer did promise the insured that he " would hold the matter open until the 9th of March, and if the premium were paid by that time it would be all right," as the policy provided that no persons except the president and secretary, acting together, are authorized to make, alter, or discharge contracts or waive forfeitures, and the renewal receipts given insured had printed on the back a notice that agents are not authorized to make, alter, or to discharge contracts, the defendant is not bound by the agreement of the said Ryer.

Answer: I have said to you that that is true, unless you are satisfied that the superintendent had authority to act as he did.[5]

4. As the policy provides that no person except the president and secretary, acting together, are authorized to make, alter, or discharge contracts, or waive forfeitures, Edward C. Ryer, on March 2, 1888, had no authority to bind the defendant by any agreement that he would on March 9th accept the premium past due since February 19, 1888.

Answer: I have told you that you have a right, from the plaintiff's testimony in this case, to which I have referred, to assume that it had been given to him.[6]

5. Even if the jury find that Edward C. Ryer did promise insured that he " would hold the matter open until the 9th of March, and if the premium were paid by that time it would be all right; " as the policy provided that premium should be paid " by said insured," and further stipulated that it should cease and determine unless the premiums should be paid on or before the time therein mentioned for the payment of the same, and " in the lifetime of the insured," the tender of payment made after the death of the insured, Simeon B. Lantz, would not be a good tender, nor sufficient to revive the policy so that the claim could be made under it against the defendant.

Answer: Refused.[7]

Arguments.

6. The premium being overdue on March 2, 1888, when Ryer, the agent, promised Menno S. Lantz to accept it if tendered by March 9th, the agent's promise is without consideration and does not bind defendant; and, as the policy had then ceased and determined by its terms, on account of the non-payment of this premium, it does not estop the defendant from availing itself of the forfeiture.

Answer: Refused.[8]

7. As there is no evidence in this case that the defendant has authorized Edward C. Ryer, or any of its · agents, to receive premiums on the policies after the death of persons insured thereby, which premiums were due before the death and were unpaid, the tender of the premium in this case, after the death of Mr. Lantz, was of no effect to avoid the forfeiture of the policy on his life.

Answer: Refused.[9]

9. The verdict should be for the defendant.

Answer: Refused.[10]

—The jury returned a verdict for the plaintiff for $3,226. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1. The part of the charge embraced in [ ] [1]
2, 3. The answers to plaintiff's points.[2] [3]
4–10. The answers to defendant's points.[4 to 10]

*Mr. Rudolph M. Schick*, for the appellant:

Assuming that the defendant's agent made the agreement alleged by the plaintiff, what he did was a very different thing from that which, it was admitted, he had authority to do, and the evidence did not justify the submission of the question whether he had authority to make such agreement. Authority given to an agent to depart from the terms of the policy as to receiving past due premiums, is not evidence of authority to bind the company by receiving them after the death of the insured: Washington Ins. Co. v. Rosenberger, 84 Pa. 379; Mutual Ins. Co. v. Laury, 84 Pa. 43. Moreover, if such agreement amounted to anything, it was a new contract of insurance until March 9th, the policy having been suspended by the failure to pay the premium on February 19th: Washington Ins. Co. v. Rosenberger, 84 Pa. 378; Lycoming Ins. Co. v. Rought, 97 Pa.

415; Hummel's App., 78 Pa. 320; Columbia Ins. Co. v. Buckley, 83 Pa. 293; Crawford Co. Ins. Co. v. Cochran, 88 Pa. 230. As such new contract, it was void for lack of a consideration, Lantz having given nothing for the promise: Marvin v. Insurance Co., 16 Hun 494, affirmed in 85 N. Y. 282; and also because in violation of and contrary to the provision of the policy, which expressly restricted the authority to make such a contract to the president and secretary acting together: Waynesboro Ins. Co. v. Conover, 98 Pa. 384; Marvin v. Insurance Co., 85 N. Y. 282; and the further provision which expressly made the insurance conditional upon the payment of the premium " by the assured " and " in the lifetime of the insured: " Want v. Blunt, 12 East 183; Simpson v. Insurance Co., 2 C. B., N. S., 257; Insurance Co. v. Ruse, 8 Ga. 534; Pritchard v. Insurance Co., 3 C. B., N. S., 622.

*Mr. Adelbert E. Stockwell,* for the appellee:

1. It is unnecessary to cite authorities to show that an insurance company may waive any condition inserted in a policy for its benefit. If there is such a waiver, which is not expressly made conditional, the law will not imply that it is so, especially when a forfeiture is involved. As the courts do not favor forfeitures, they will, when the party by whose fault they have been incurred has a just and reasonable ground, in the agreement or acts of the insurer, on which to base a reasonable excuse for his default, enforce the policy notwithstanding the default: Thompson v. Insurance Co., 104 U. S. 260; Insurance Co. v. Norton, 96 U. S. 234; Insurance Co. v. Eggleson, 96 U. S. 572; Lovell v. Insurance Co., 111 U. S. 264; Insurance Co. v. Doster, 106 U. S. 30; Howell v. Insurance Co., 44 N. Y. 276 (4 Am. Rep. 675); Och v. Insurance Co. (C. P.) 21 Pittsb. L. J. 98; Helme v. Insurance Co., 61 Pa. 107; Buckbee v. Insurance Co., 18 Barb. 541; Ruse v. Insurance Co., 26 Barb. 556; Insurance Co. v. Pierce, 75 Ill. 426.

2. It is conceded that the validity of this policy would have been recognized, had the insured been alive and in good health on March 9th, and the company cannot, consistently with honesty and fair dealing, repudiate it, because a loss occurred before that date: Universal Ins. Co. v. Block, 109 Pa. 535; Riley v. Insurance Co., 110 Pa. 144. The fact that a policy

declares that an agent shall have no power to waive a forfeiture or to modify the contract of insurance, is not decisive as to the agent's power in these respects, and it may be shown that the company has authorized the agent to exercise such powers, or has permitted him to do so, to such an extent as to be estopped from denying his authority: Insurance Co. v. Maguire, 51 Ill. 342; Insurance Co. v. Fahrenkrug, 68 Ill. 463; Insurance Co. v. Norton, 96 U. S. 234; Keenan v. Insurance Co., 12 Ia. 426; Perkins v. Insurance Co., 4 Cow. 645; Johns v. Insurance Co., 2 W. N. 243, affirmed in 4 W. N. 131. And the question, whether the agent had such authority, then becomes one of fact for the jury: Sheldon v. Insurance Co., 25 Conn. 207; Insurance Co. v. Norton, 96 U. S. 234; Insurance Co. v. Doster, 106 U. S. 30; Universal Ins. Co. v. Block, 109 Pa. 535; Riley v. Insurance Co., 110 Pa. 144; Johns v. Insurance Co., 2 W. N. 243; s. c. 4 W. N. 131.

3. It is claimed by the defendant that the extension of time was not binding, for want of a consideration. The principle running through all the insurance cases is, that when there is a waiver of forfeiture, no lapse, in the sense of a termination of the contract, takes place; and hence the question of consideration is rarely raised. When it has been insisted on, it has been decided that there was sufficient consideration: Homer v. Insurance Co., 67 N. Y. 478; Leslie v. Insurance Co., 2 Hun 616; Insurance Co. v. Norton, 96 U. S. 234; Viele v. Insurance Co., 26 Ia. 9 (96 Am. Dec. 83). In most of the cases relied on by the appellant, the insurers were mutual companies, which are governed by a principle not applicable to other companies, and in both those and the other cases cited, there had not been a course of dealing between the insured and the company, such as would justify him in believing that the agent was given authority to waive forfeitures, or that the company did not mean to insist upon strict compliance with the terms of the policy.

*Mr. Schick*, in reply:

Not one of the cases cited for the appellee is similar to the case at bar. In none of them did the policy contain the provision that the premium must be paid in the lifetime of the insured, and a reading of them will show that they must have

Arguments.

been decided differently, had this been the case. On the point as to the authority of an agent to make an agreement that a premium, already past due, shall be received at a future day, all the cases cited, with one exception, were determined upon a principle which has no application in the present case, viz., that of estoppel. The exception is Insurance Co. v. Norton, 96 U. S. 234, in which the dissenting opinion of Mr. Justice STRONG is more in accord with other decisions of the court, and with the ruling of this court in Washington Ins. Co. v. Rosenberger, 84 Pa. 379, than is the majority opinion.

On re-argument, *Mr. Rudolph M. Schick*, for the appellant :
Counsel cited, in addition to the cases cited upon the former argument: Imperial Ins. Co. v. Dunham, 117 Pa. 473 ; Gould v. Insurance Co., 134 Pa. 570.

*Mr. Adelbert E. Stockwell*, for the appellee :
1. Ryer was the general manager for Pennsylvania of the defendant, a foreign company, and he had power as such to waive the conditions written in the policy : Bohen •v. Insurance Co., 35 N. Y. 164 ; Marcus v. Insurance Co., 68 N. Y. 625 ; Insurance Co. v. Booker, 9 Heisk. 606 ; Goit v. Insurance Co., 25 Barb. 189 ; Sheldon v. Insurance Co., 26 N. Y. 460 (84 Am. Dec. 213) ; Insurance Co. v. Fahrenkrug, 68 Ill. 463 ; Keenan v. Insurance Co., 12 Ia. 126 ; Johns v. Insurance Co., 4 W. N. 131 ; O'Brien v. Insurance Co., 22 Fed. R. 586 ; Tennant v. Insurance Co., 31 Fed. R. 322.
2. His authority to make the waiver and extension of time in this case, are proved by the nature of his position, as general manager, by the admission of the defendant, made at the trial, and by the evidence showing the course of dealing between the parties. An insurance company, by a general stipulation in the policy, cannot incapacitate itself from making an oral waiver which does not infringe upon the statute of frauds : Lamberton v. Insurance Co., 39 Minn. 129 ; Trustees v. Insurance Co., 19 N. Y. 305 ; Insurance Co. v. Norton, 96 U. S. 234.
3. The provision in the policy, that the premium must be paid in the lifetime of the insured, is a condition introduced for the benefit of the company, and beyond a doubt may be waived by it. The general manager, therefore, has a right to

Opinion of the Court.

waive it: O'Brien v. Insurance Co., 22 Fed. R. 586; Mayer
v. Insurance Co., 38 Ia. 304 (18 Am. Rep. 34); Insurance Co.
v. Booker, 9 Heisk. 606; and this, notwithstanding the pro-
vision that such waivers must be made by the president and
secretary : O'Brien v. Insurance Co., 22 Fed. R. 586; Ten-
nant v. Insurance Co., 31 Fed. R. 322.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an action on a policy issued by the defendant com-
pany, insuring the life of Simeon B. Lantz, for the benefit of
his wife, Evalina E. Lantz, the plaintiff below.   The policy
stipulated that the premiums should be paid quarterly, on the
nineteenth days of February, May, August, and November in
each year; that if the said premiums should not be paid on the
days named and in the lifetime of the assured, the policy should
cease and determine; that the acceptance of a premium after
maturity should not be deemed or construed as a waiver, or as
any evidence of an agreement to waive the payment of any
future premiums at the time the same shall, by the terms of
the policy, become payable; and that no person except the
president and secretary, acting together, are authorized to make,
alter, or discharge contracts, or waive forfeitures.

Upon the trial below it was among the admitted facts of the
case that the premiums falling due in May, August, and Novem-
ber, 1887, were not paid at maturity, but were paid after matu-
rity, and accepted by the company; that the premium due on
February 19, 1888, was not paid at maturity; that on March 2,
1888, a brother of the insured, who was also a policy-holder,
called on the general agent of the company in Philadelphia,
and informed the latter that Simeon B. Lantz would be down
on March 6th to pay his premium, and was told that he, the
agent, did not make out his monthly report until the tenth of
the month, and that if the premium was paid by the ninth it
would be all right.   So far there is no dispute.   But Mr. Lantz,
the witness, testified that there was no condition annexed to
the promise to receive the money, while Mr. Ryer, the agent,
testified that he said he would receive the money provided the
insured was in his usual health at the time; that he would
have to be satisfied upon this point, either by a health certifi-
cate, or by seeing the insured personally, and that in the mean-

time the latter was carrying the risk himself. This question of fact was submitted to the jury, and they have found there was no condition annexed to the promise. We must, therefore, treat the case upon this basis.

It may simplify the discussion somewhat to note the following admission of the learned counsel for the company, to be found on page 12 of his paper-book:

" It was admitted on the trial that the insured had paid three prior premiums after maturity, which had been received by the defendant; and also that the manager was in the habit of, and practically had authority to receive premiums and deliver renewal receipts after maturity, provided that the insured was at the time of the payment in good health. This was as far as the testimony went. There was no evidence which, even the plaintiff pretends, goes to show that the agent had authority, or has ever acted beyond this, or that the company had ever known of or ratified such agreement; and it was further admitted, that, if Simeon B. Lantz, the insured in this case, had on March 9th been alive and in good health, and had tendered payment of the premium, it would have been received."

Simeon B. Lantz, the insured, was in good health on March 2d, but was taken ill on the next day, and died on March 6th.

The above admission disposes of any question as to the authority of the general agent to receive overdue premiums. But we must stop where the admission ends, unless a further or greater authority is to be found in the evidence. In order to establish an authority to receive an overdue premium, after the death of the insured, one of two things must be shown, viz.: (a) An express authority to do so, conferred upon him by the company; or (b) such a course of dealing on the part of the company, by ratifying or recognizing such acts of the agent, as would justify persons dealing with said company in assuming that he possessed such authority. There is not a word in the testimony to sustain either of these propositions. All that it shows was the receipt of overdue premiums on three occasions. But the insured was in full life and health at the time. The case of the plaintiff, if sustained at all, must rest upon the promise of the agent to receive the premium up to the ninth day of March. This promise, as before observed, the jury have found to be an unconditional one. This I understand to mean,

that the money would be received as late as the ninth of March, without regard to the health of the insured, or even his death prior to that time. It remains to consider the legal effect of such promise.

The first question which logically suggests itself is, what was the legal effect upon the status of the policy, by the default or failure to pay the premium due on the nineteenth of February? Did it continue to bind the company and protect the insured thereafter? And, if so, how long did it remain in force? Was it for a week, a month, or a year? I know of no instance in which a policy was held to be in force after such a default, unless in pursuance of a contract made between the company and the insured contemporaneous with the insurance, or during the life of the policy. In Helme v. Insurance Co., 61 Pa. 107, the plaintiff offered to prove "that it is the custom among insurance companies to receive premiums if tendered at any time within thirty days of the time they fall due, provided the insured is in usual health, and that this is the custom among companies issuing policies stipulating that non-payments of premiums at the day shall be a forfeiture." This offer was rejected by the court below, and the rejection was held to be error, Chief Justice THOMPSON saying: "It might have been a difficult thing to prove such a custom, but that was not a good ground on which to refuse the offer." The grounds of this decision are obvious. While a custom which has grown into a law may not be heard, as a general rule, to affect the terms of a statute, nor a contract, to the extent of enlarging or abridging the force of it, yet it may interpret either: Rapp v. Palmer, 3 W. 178. The Chief Justice gives a number of examples of the application of this principle; among others, the familiar instance of the days of grace on commercial paper. By the custom of merchants, so universal as to have grown into law, such paper is not due until three days after it purports to be due; or rather, the remedy is suspended during that period.

It was not alleged that any such custom existed in this case. There was not even an offer to show it, much less proof to support it. Did the fact that the company upon three prior occasions accepted the premium from the insured after maturity, the insured being in good health at the time, continue the policy in force after the default on the nineteenth of February?

I know of no authority for such a proposition, and none has been called to our attention. It was at most a mere personal indulgence, a matter of grace on the part of the company; and all that can be claimed for it is that it may have led the insured to believe that, if he again neglected to pay on the day, the money would be accepted if paid shortly thereafter, provided no change had occurred in his condition of health. The law upon this subject is so clearly stated by Mr. Justice BRADLEY, in Thompson v. Insurance Co., 104 U. S. 252, that I need make no apology for quoting it at length:

"The last replication sets up and declares that it was the usage and custom of the defendants, practiced by them before and after the making of said note, not to demand punctual payment thereof at the day, but to give days of grace, to wit, for thirty days thereafter; and they had repeatedly so done with Thompson and others, which led Thompson to rely on such leniency in this case. This was a mere matter of voluntary indulgence on the part of the company, or, as the plaintiff himself calls it, an act of leniency. It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come. As long as the assured continued in good health, it is not surprising and should not be drawn to the company's prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time; and, in each instance in which it happened, it had respect only to that particular instance, without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on an occasion of a particular lapse, without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and to the public."

The consequence of a default in the payment of the premium is defined in the policy itself. It declares that, if not

paid on the days named and in the lifetime of the insured, the
policy should " cease and determine." By this I understand
that it is suspended; it ceases to bind the company and to pro-
tect the assured, and this without any act or declaration on the
part of the former. It does not require a formal forfeiture.
This term is often used, and, I think, inaccurately, in such
cases. Nor, is the policy void in the general sense of that term.
It is voidable at the election of the company, and that election
can be exercised without notice to the assured, for the reason
that the policy itself is notice that his rights cease with the
non-payment of the premium. As to him it is a dead policy.
It is true it may be restored to life, by the subsequent pay-
ment of the premium and its acceptance by the company.
This, however, is a new contract by which the company agrees
in consideration of the premium to continue in force a policy
which had previously expired; in other words, it is a new as-
surance, though under the former policy : Want v. Blunt, 12
East 183. I do not understand it to be contended that, had
the assured died between the nineteenth of February and the
second of March, there could have been a recovery on this pol-
icy. It seems almost a work of supererogation to cite authori-
ties for so plain a proposition, and I will refer to but few, out
of an abundance.

In Washington Ins. Co. v. Rosenberger, 84 Pa. 373, which
was a case of fire insurance, our Brother Sterrett, after say-
ing that the default suspended the protection of the policy,
continued: " Upon the payment of the assessment the policy
would have been revived in its full vigor; but it was never
paid, or even tendered, until after the fire, and, as delinquent
policy-holders, they had no right to maintain the action with-
out showing that the default was either waived or excused by
the company. There is no evidence of waiver, nor do we
think there is any evidence to excuse the default. There was
considerable testimony showing that great indulgence was ex-
tended to delinquent members, and that the company was ac-
customed to receive assessments long after they were due; but
this is entirely consistent with the fact that, while the default
continued, the protection of the policy was suspended." In
Lycoming Ins. Co. v. Rought, 97 Pa. 415, it was said by Mr.
Justice Mercur: " It is well settled, if a member of a mutual

insurance company is in default in the payment of an assessment upon his policy, after due notice according to the by-laws and rules of the company, the protecting power of the policy is suspended until the assessment is paid. No recovery can be had for a loss sustained during the continuance of such default:" citing Hummel's App., 78 Pa. 320; Columbia Ins. Co. v. Buckley, 83 Pa. 293; Washington Ins. Co. v. Rosenberger, 84 Pa. 373; Crawford Co. Ins. Co. v. Cochran, 88 Pa. 230. It is true, these were cases of fire insurance companies, but the principle is equally applicable to a case of life insurance.

This we think sufficient to show that no recovery could have been had upon this policy, had the assured died between the date of the maturity of the premium, and the promise of the agent to accept the premium on the ninth of March. Regarding that as a promise to accept the premium, even in the case of the previous death of the assured, we are led to inquire, in the first place, what authority had the agent to make such a promise? The condition of the policy is explicit that the premium must be paid "in the lifetime of the insured." Had the agent the authority to waive this condition? The policy not only declared that no person except the president and secretary, acting together, are authorized to make, alter, or discharge contracts, or waive forfeitures, but a notice to the same effect was printed on the back of each renewal receipt given to Mr. Lantz. It was not alleged that the president and secretary, acting together or singly, had ever waived this condition in the policy, or that they, or either of them, had given authority to the agent to waive it in this or any other instance. No course of dealing was shown on the part of the company by which the grant of such authority to the agent could be implied. There was not even an attempt to prove that the company or its agent had ever received an overdue premium after the death of the assured. There is nothing within the four corners of this record to show that the agent had authority, express or implied, to waive this condition. What right had the assured to suppose, with this condition in the very front of his policy, that the agent would receive his overdue premium after his death?

We are not without authority upon this point. The leading case is Want v. Blunt, 12 East 183. The following statement

of the facts is condensed from the opinion of Lord ELLEN-
BOROUGH: The policy provided for the payment of quarterly
premiums on March 25th, June 24th, September 29th, and
20th of December, during the life of the said W. W. Want, or
within such time after those days, respectively, as is or shall
be allowed for that purpose by the rules of the said society.
It was provided by the rules of the society that if any member ·
neglected to pay the quarterly premiums for fifteen days after
the same become due, the policy will be void.    This provision
was attached to the policy.    The quarterly payments were all
paid at maturity, until the one that came due on December
20th, which was not paid, and Want died on December 25th;
and on December 27th, two days after his death, but within
the fifteen days, his executors tendered the payment of the
premium, which was refused.    The court sustained the re-
fusal, Lord ELLENBOROUGH saying, inter alia : " This is a con-
tract of assurance, and must be construed according to the
meaning of the parties as expressed in the deed or policy. . . . .
The risk insured against is his death, and the premium is a
quarterly payment, to be made by him to the society during
his life.    The duration of the insurance is so long as he shall
continue to make those quarterly payments ; but the insurance
is not to be void if he pay the quarterly premium within such
time after the quarter day as is allowed by the rules of the
society. . . . .    The covenant on the defendant to pay the
wife's annuity after Want's death is, 'if Want shall pay, or
cause to be paid, the quarterly premium on every quarter day
during the life of Want, or within such time after as shall be
allowed by the rules of the society for that purpose ; ' in con-
struing which sentence, the expression, 'during the life of
Want,' must be understood as applying to and carried on to
the latter part of the sentence, and is the same as if the words
' during the life ' had been repeated after the words ' within
such time after,' i. e., or ' within such time after, during the
life ' . . . . .    For these reasons we are of opinion that the
death of W. W. Want, which happened on the 25th of Decem-
ber, was during a period of time not covered by the policy,
and that, on the true construction of the policy and rules of
the society, the insurance could not be continued beyond the
expiration of the quarter which ended on the 20th of Decem-

ber, by a tender of the premium by his executors after his
death, though within fifteen days after the quarter day, so as
to include within the policy the period of his death." In
Simpson v. Insurance Co., 2 C. B., N. S., 257, the words of
the policy were: " Provided he, the said insured, on or before
. . . . . pay or cause to be paid to the defendant the annual
premium;" and on this point the court said: " The policy
was to continue, provided he, the insured, paid the premium
within the twenty-one days; and this, we think, did not give
the executors the right to pay it after his death." To the
same point is Pritchard v. Society, 3 C. B., N. S., 622; Insur-
ance Co. v. Ruse, 8 Ga. 534. The rule laid down in Want v.
Blunt, supra, appears to have been followed in all subsequent
cases where the same point arose. If there has been any de-
parture it has not been called to our attention.

If, however, we are wrong in this; if we regard the condition
in the policy that the premium must be paid in the lifetime of
the insured, as of no effect, or, if effective, that it has been
waived, there is another reason why the company was not
bound to receive the premium after the death of the assured.

I have endeavored to show that by the failure to pay the
premium, the policy lapsed, or was suspended, on the nineteenth
of February. With the policy in this condition, the plaintiff
proved, as already stated, an unconditional promise, on the part
of the agent of the company, to accept the premium up to the
ninth of March. In the ordinary case of the payment of an
overdue premium, as all the authorities show, the policy does
not bind between the default and the payment. The plaintiff
claims that this case does not come within the rule; that the
promise enlarged the time of payment, precisely as if March
9th had been the period stipulated in the policy; and that
from the time the promise was made until the time it was to
be fulfilled the policy was in full force. But if, as I have at
least endeavored to show, the policy did not bind between the
default and the promise, what occurred on the second day of
March to change the situation of the parties and restore this
dead policy to life? Was it the payment of the premium?
The premium was not paid. Was it a promise to pay it?
There was no such promise. There was nothing but the bare
promise of the agent to accept the premium if paid by the

ninth of March. Had it been paid by the assured prior to
that date, and accepted by the company, the policy undoubt-
edly would have been restored to life. This would result, not
by virtue of the promise of the agent, but from the acceptance
of the premium as a consideration for the renewal. It would
have been a new assurance under the old policy. The mere
promise of the agent, made after the default had occurred, to
receive the premium up to March 9th, was a nudum pactum.
It was not a contract, because there were no contracting parties.
The assured gave nothing; promised nothing. A lapsed policy
can only be restored to life, so far as the assured is concerned,
by the actual payment and acceptance of the premium, or a
contract based upon a sufficient consideration. What consid-
eration did the company receive for carrying this risk from the
nineteenth of February until the ninth of March? Had the
insured lived until the latter date, and then refused or neg-
lected to pay his premium, he would have had the benefit of
an insurance on his life during said period without paying a
dollar of consideration. For, as before stated, he did not give
anything, nor did he promise anything. It was optional with
him to pay; the company could not have enforced it against
him had he declined. There is no provision in the policy
which covers such a case. If the insured does not pay, the
policy drops, and the contract relation ceases.

Marvin v. Insurance Co., 85 N. Y. 282, is so exactly like the
case in hand upon the facts that a reference to it will not be
out of place. In that case one Milton B. Marvin had a policy
of $3,000 on his life, payable to his wife in case of his death.
The premium due on the thirteenth of April was unpaid. On
the 27th of April, Hinkle, the agent of the company, told the
assured that if he paid the premium the next morning, the
28th, he, the agent, would receive the same. Hinkle went to
the house of the assured the next day, and there found him
lying sick upon his bed, and, on being offered the overdue pre-
mium by the assured, declined to receive it at that time be-
cause the assured was then sick, but told him to keep the
money, and when he got well, he, Hinkle, would receive it,
and keep the policy alive. The assured never did recover
from his sickness, the premium was not paid, and the company
notified the assured that it would hold itself absolved from the

contract by reason thereof. The assured died in the following September. Under this state of facts it was held there could be no recovery upon the policy, the court below saying:

"We think the plaintiff was properly nonsuited. As we understand the law, as laid down by the court of last resort in such cases, in order to a valid extension of the time for the payment of a premium upon a life-policy after the time of payment has gone by, there must be some valid consideration for the extension or waiver of the condition of payment, or there must be something said by or on behalf of the insurance company while the party bound to make the payment has still time and opportunity for so doing, by which the insured is induced to believe the condition is waived, or that strict compliance will not be insisted on. This introduces an element of estoppel in the case. In such a case, it would be unjust to allow the insurance company to repudiate the agreement, and to insist that, because of the non-payment of the premium punctually, which omission had been induced or countenanced by its own act, it should be absolved from the performance of its part of the contract."

This case was affirmed in the Court of Errors and Appeals in an opinion by FINCH, J., principally upon the ground that, even if Hinkle was the general agent of the company, he had no authority to waive the condition as to payment, the clause in the policy containing a condition similar in this respect to that in the policy in this case. For this reason, the court did not deem it necessary to express an opinion upon the ground upon which the court below rested the case, viz., the want of consideration for the promise, but said expressly: "It must not be inferred that we deem the ground of the decision below incorrect."

This case is valuable for the further reason that it shows very clearly the ground of the distinction between a promise to extend the time of payment, made before the time of such payment, and one made after the default. In the former instance the assured may have relied upon the promise, and allowed the time to slip by; whereas, without such promise, he might have procured the money and paid the premium. Hence, the cases hold that the company, having misled the assured to his harm, are estopped from alleging a default be-

cause of non-payment on the day. But, where a promise is made after the default, the assured has not been misled or injured in any manner. He has allowed his policy to lapse by his own neglect; it can only be restored by the consent of the company, and he has no reason to suppose that if he dies before the matter is perfected by the payment and acceptance of the premium the company will pay as in the case of a live policy.

In nearly every case cited to show the authority of an agent to bind the company, by a promise made after a default to pay the premium, the decision of the court was rested upon the ground of estoppel, a principle which I do not think has any application to the case in hand. In Dean v. Insurance Co., 62 N. Y. 642, the agreement to extend the time was not only made before the premium became due, but the company had actually received the notes of the assured for the payment of three fourths of the premium. This not only introduced the element of estoppel, but the notes received constituted a valid consideration for the waiver of punctual payment. In Homer v. Insurance Co., 67 N. Y. 478, the agreement extending the time of payment was also made before the premium fell due, and thus the policy-holder was prevented from paying the premium on the day it became due by the terms of the policy. In Tennant v. Insurance Co., 31 Fed. R. 322, the credit was extended while the policy was in full force. In Church v. Insurance Co., 66 N. Y. 222, the dealings were between the assured and the home office, and no question was involved as to the authority of the agent. The court held there was evidence to go to the jury that a credit was intended, inasmuch as it showed a prior dealing with the assured for many years, and that he was in the habit of getting policies without paying for them at the time. In Insurance Co. v. Norton, 96 U. S. 234, there is an expression by Mr. Justice BRADLEY which indicates that he did not see any difference between a promise to extend the time of the payment of the premium, made before the default, and a promise made after such default. In this case, however, there was not only a promise made to pay, but this was followed up by an actual tender of the premium, and a refusal by the company of such tender. This presents an entirely different state of facts from the case I am discuss-

ing, and Mr. Justice BRADLEY'S remark must be taken in connection with the particular facts to which he was referring. In Insurance Co. v. Eggleson, 96 U. S. 572, the question was whether the assured was excused for not paying his premium at maturity.   This clearly appears from the concluding portion of the opinion of Mr. Justice BRADLEY.   It is as follows: " The insured, residing in the state of Mississippi, had always dealt with agents of the company, located either in his own state or within some accessible distance.   He had originally taken his policy from and had paid his first premium to such agent, and the company had always, until the last premium became due, given him notice what agent to pay to.   This was necessary, because there was no permanent agent in his vicinity.   The judge rightly held that, under these circumstances, he had reasonable cause to rely on having such notice.   The company itself did not expect him to pay at the home office; it had sent a receipt to an agent located within thirty miles of his residence ; but he had no knowledge of the fact, at least such was the finding of the jury from the evidence."   Insurance Co. v. Doster, 106 U. S. 30, is somewhat similar as to its facts.   The assured was entitled to a dividend on the business of the company, which was set apart to the insured in part discharge of his premium.   The company failed to notify him of the amount, and it was the cause of the delay in the payment.

In Universal Ins. Co. v. Block, 109 Pa. 535, the premium had been paid, and the question was whether it had been paid to the proper person.   In Lebanon Ins. Co. v. Hoover, 113 Pa. 591, which was the case of a payment of the premium on a fire policy after maturity, there was a course of dealing by which the agent gave the assured a credit in his accounts, and became himself the debtor of the company therefor.   This clearly appears from the following extract from the opinion of Mr. Justice STERRETT: " On the trial, evidence was received tending to show that Fredrick, through whom the insurance was placed, was the recognized agent of the company for the purpose of securing risks, receiving and remitting premiums, etc.; that in his dealings with the company he was made its personal debtor for premiums on all policies issued through him, and that he periodically accounted to it therefor, whether the

money was received by him from the persons to whom the policies were issued or not; that he made the persons or firms to whom he delivered policies his personal debtors, and dealt with them in that relation, charging them with the premiums on his books, sending them bills in his own name, and making himself responsible to the company for the same; and that the bills for premiums were generally rendered some time during the month after the insurance was effected."

I have not of course, reviewed all the authorities cited; I have considered the most important.    To review them all would protract this opinion to such a length that no one would probably read it.    No Pennsylvania case was cited which is in serious conflict with the views above expressed, nor have I been able to find one after a careful examination of the digests. It is possible I may, in the press of business, have overlooked some such case.    We have little leisure to search for cases that are not cited.    But I regard the overwhelming weight of authority, both in this state and elsewhere, to be in accord with the principles above stated; moreover, I believe them to be sustained by the sounder reason.

Under the circumstances, we think it was error for the learned judge below to charge the jury as follows: "Therefore I think the question arises, and it is for you to say, in this case, whether this general superintendent, residing here in Philadelphia, with his principal in Vermont, and in the constant habit of doing this very thing,—because we find a number of receipts where he did receive the money subsequent to the time fixed, and it is testified to in this case that he certainly agreed to do it, and had done it in the case of Mr. Lantz, his brother, so that, if the rule was to be enforced as it is written, he would have no right to do this thing which he was in the habit of doing, and that therefore it is a question for you to say whether he had any authority; whether the company, having permitted him to do this thing constantly and knowingly, had not authorized him,—the secretary and president had not authorized him,—to perform the acts that he was doing."    See first assignment.

The " thing " which the agent had done and which the company had ratified was the acceptance in three instances of overdue premiums from the assured, he being in full life at the

time.   Authority beyond this could not be inferred from any act of the company or its agent.   It was not denied,—indeed, it was expressly admitted,—that had the assured tendered the premium during his lifetime, it would have been accepted, and the policy reinstated.   No inference can be properly drawn from this, however, that the company would receive the premium after the death of the assured.   The learned judge failed to note the difference between the renewal of a lapsed policy by the actual payment and acceptance of the premium, and a mere attempt to renew it without any consideration moving from the assured to the company.   The one is a completed transaction, and therefore binding; the other is uncompleted, and does not even amount to a contract.   The same error runs through the charge.   The assignments are all sustained.   We think there should have been a binding instruction in favor of the defendant.

Judgment reversed.

Mr. Justice STERRETT and Mr. Justice CLARK noted their dissent.