## Rhodes, Appellant, *v.* Royal Union Mutual Life Insurance Company.

*Insurance—Life insurance—Forfeiture—Waiver—Premium note.*

1. Where an application for life insurance provides "that any note or obligation given for premium shall be accounted only as an extension of time for payment, and if not paid at maturity, all liability under any policy issued hereon shall at that date cease," and a premium

note provides that "if this note is not paid at maturity, with interest, all liability under said policy by reason of this note shall cease," failure to pay such note at maturity works a forfeiture of the policy without notice to the insured; and requests subsequently made by the company for the payment of the note are not a waiver of the forfeiture; nor is the mere retention of the note a waiver.

2. The mere fact that the company had previously accepted payment of an over-due note and reinstated the policy, is not in itself sufficient to establish a course of dealing which justifies the insured in believing that the strict terms of the policy would not be insisted on in the future.

Argued Oct. 29, 1913.   Appeal, No. 189, Oct. T., 1913, by plaintiff, from judgment of C. P. Blair Co., Oct. T., 1910, No. 173, on verdict for defendant in case of Fannie V. Rhodes v. Royal Union Mutual Life Insurance Company of Des Moines, Iowa.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Affirmed.

Assumpsit on a policy of life insurance.   Before BALDRIDGE, P. J.

At the trial the jury returned a verdict for plaintiff for $1,112.53.

On a motion for defendant n. o. v. BALDRIDGE, P. J., filed the following opinion:

Clarence H. Rhodes on March 16, 1907, took out a policy of insurance on his life in the defendant company, in the sum of $1,000, wherein Fannie V. Rhodes, wife of the assured and plaintiff herein, was named as beneficiary.

On March 28, 1909, the third annual premium of $52.20 became due.   On that date the assured gave his promissory note, payable in thirty days, to the defendant company, in the sum of $41.76, which with a dividend to which he was entitled, of $10.44, amounted to the annual premium.   This note provided that if it "is not paid at maturity, with interest, all liability under said policy, by reason of this note, shall cease."

[On April 18, or April 26, the exact date is not very

important, $5.00 was paid on account of the note, and the following indorsement made on the back thereof: "Extended 60 days."   The renewed note fell due June 18, 1909.   It was not contended that any payments were made on account thereof after the expiration of the renewal.] [4]

, On December 20, 1909, the assured died.   The plaintiff has brought this action to claim the amount which she contends is due her under the policy taken out by her husband.

[The defendant insurance company has denied its liability, taking the position that the failure of the assured to pay the note when it fell due was a forfeiture upon his part, and that their liability thereunder ceased; the plaintiff contending that it was the duty of the defendant company to take some affirmative action before claiming that there was a forfeiture of the contract of insurance by the assured.] [5]

Counsel for plaintiff has argued that there was no forfeiture recognized by the defendant company, as the retention of the premium note of the assured was a waiver of its provisions in the note that nonpayment at maturity will determine the contracts and cites in support thereof Union Central Life Insurance Co. v. Spinks, 26 Ky. L. Reps. 1205.   In that case, however, there was an active, aggressive attempt made to collect the overdue premium note.   The plaintiff undertook to show that there was an attempt made in this case, but was unsuccessful.

It has been ruled in our own state in the case of Seeley v. Union Central Life Insurance Co., 10 Pa. Superior Ct. 270, that where a note is given containing a stipulation that if the note given for a premium is not paid at maturity, the policy including all conditions for surrender or continuance as a paid up term policy, shall be null and void, and is a provision that will be sustained by our courts.

In the case of Iowa Life Insurance Co. v. Lewis, 187

U. S. 335, which was decided by the supreme court of the United States, a note was given by the assured containing a clause reading as follows: "If the same is not paid at maturity, the said policy shall cease and determine." The import of the phraseology is the same as used here. The court held that the policy of insurance was forfeited without any affirmative action on the part of the insurance company by the failure to pay at maturity the note given for the payment of the premium.

To the same effect are Thompson v. Knickerbocker Life Insurance Co., 104 U. S. 252; McAllister v. Mutual Life Insurance Co., 101 Mass. 558; Murphy v. Prudential Insurance Co., 30 Pa. Superior Ct. 560.

In the case of Hudson v. Knickerbocker Life Insurance Co. of New York, 28 N. J. Equity, 167, the court held: "The policy required a payment, on a day certain, of a specific sum; its payment on the day designated is a condition precedent to the continuance of the policy, and it is expressly provided that the failure to make it destroys the policy. The parties have agreed upon its conditions, and the court has no power to modify it or dispense with it. It is not stipulated a partial payment shall keep the policy alive for such fractional part of a year as the payment bears to the whole premium, and in the absence of such an agreement a partial payment is better than no payment."

[We felt at the time we submitted this case to the jury that there was not enough evidence to support the plaintiff's contention, but were predisposed to decide the doubt in her favor. A more extended investigation which we have given the case confirms the conclusion that there was not sufficient evidence for submission to that tribunal.] [7]

Where one enters into a contract he is bound to know the terms and provisions thereof, and it is his duty to comply therewith. If he has been unwise or unfortunate in his ability so to do, unless fraud can be shown, a court cannot render him any assistance. If the assured

had complied with the terms of his contract there could have been a recovery in this case, but his failure so to do deprives his beneficiary of that right. A party cannot violate the terms of a contract and then claim the advantages thereunder.

[The foregoing authorities bring us to the conclusion that the defendant's motion for judgment non obstante veredicto should be sustained.] [8]

[Now, February 20, 1913—This motion came on for hearing, was argued by counsel and after due consideration it is hereby ordered, adjudged and decreed that the motion for judgment non obstante veredicto be, and hereby is granted.] [9]

*Errors assigned* among others were (3) refusal of binding instructions for plaintiff, and (4–9) portions of opinion as above, quoting them.

*Thomas H. Greevy*, for appellant.—There was sufficient evidence of waiver: Mettner v. Ins. Co., 127 Iowa, 205; Union Central Life Ins. Co. v. Spinks, 26 Ky. Law Rep. 1205; Wachter v. Assurance Co., 132 Pa. 428.

Course of dealing, or conduct, on part of company, leading insured to believe that a forfeiture will not be incurred, will estop company from insisting upon the forfeiture, although it might be claimed under the express contract: N. Y. Ins. Co. v. Eggleston, 96 U. S. 572; Mutual Reserve Fund Assn. v. Beatty, 93 Fed. Repr. 747; Helme v. Ins. Co., 61 Pa. 107.

Policy is in force although the year's premium had not been fully paid: Ellis v. Anderson, 49 Pa. Superior Ct. 245.

Slight evidence of waiver is sufficient: Kalmutz v. Ins. Co., 186 Pa. 571; McFarland v. Ins. Co., 134 Pa. 590; New England Mut. Life Ins. Co. v. Springgate, 112 S. W. Repr. 681; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335.

*Robert W. Smith*, with him *J. Banks Kurtz*, for appellee.—The highest courts of Pennsylvania, New Jersey

and New York, as well as the supreme court of the United States, have uniformly upheld and sanctioned forfeiture contracts between life insurance companies and their policy holders: Seeley v. Union Central Life Insurance Co., 10 Pa. Superior Ct. 270; Kerns v. Ins. Co., 86 Pa. 171; Thompson v. Life Ins. Co., 104 U. S. 252; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335; Hudson v. Life Ins. Co., 28 N. J. Eq. 167; Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437.

OPINION BY RICE, P. J., February 20, 1914:

The first question to be considered is as to the effect of the giving and acceptance of, and the failure to pay at maturity, the thirty days' note for the third annual premium which fell due on March 18, 1909. The note contained the express agreement that time of payment was of the essence of the contract, that the note was to be accounted simply as an extension of time for payment of the third annual premium, and that if the note was not paid at maturity, with interest, all liability under the policy by reason of the note should cease. The application for the policy contained a similar agreement on the part of the insured as to any note or obligation given for premiums, and the policy declared that it was issued in consideration of the declarations, answers, and agreements made in the application, and of the payment of the premium on March 18 of each year, and that a failure to make such premium payment should work a forfeiture of all insurance and right under the policy. In view of these agreements the question above stated is free from difficulty. The time for payment of the premium was extended by the giving and acceptance of the note, but liability on the policy ceased, without any affirmative action on the part of the insurance company, upon the failure to pay the note at maturity. This was the express and unambiguous agreement of the parties, and such agreements have been sustained and enforced in numerous cases: Kerns, Ad-

ministratrix, v. N. J. Mut. Life Ins. Co., 86 Pa. 171;
Seeley v. Union Central Life Ins. Co., 10 Pa. Superior
Ct. 270; Thompson v. Knickerbocker Life Ins. Co., 104
U. S. 252; Iowa Life Ins. Co. v. Lewis, 187 U. S. 335;
Hudson v. Knickerbocker Life Ins. Co., 28 N. J. Eq. 167;
Baker v. Union Mut., 43 N. Y. 283; Holly v. Metropolitan
Life Ins. Co., 105 N. Y. 437.

Allusion is made by appellant's counsel to the evi-
dence that when the policy was delivered (May 3, 1907)
the insured gave his note, payable in three months, for
the first premium, which was protested for nonpayment
at maturity, and subsequently paid.   The time and
circumstances of payment are not stated.   It may be
assumed, however, that there was a waiver of forfeiture
for nonpayment of that premium on the maturity of
the note.   But a single unexplained instance of accept-
ance of premium after it is due is insufficient to establish
a "course of dealing" which justifies the insured in
believing that the strict terms of the policy will not be
insisted on in the future and therefore estops the com-
pany from taking advantage of subsequent defaults.
The following extract from the opinion of Justice
BRADLEY, in Thompson v. Knickerbocker Life Ins. Co.,
104 U. S. 252, was cited with approval in Lantz v. Ver-
mont Life Ins. Co., 139 Pa. 546, and may be pertinently
quoted here: "The assured had no right, without some
agreement to that effect, to rest on such voluntary indul-
gence shown on one occasion, or on a number of oc-
casions, as a ground for claiming it on all occasions.   If
it were otherwise, an insurance company could never
waive a forfeiture on an occasion of a particular lapse,
without endangering its right to enforce it on occasion
of a subsequent lapse.   Such a consequence would be
injurious to them and to the public."   See also Sydnor
v. Metropolitan Life Ins. Co., 26 Pa. Superior Ct.
521.   Moreover, the insured in the present case was
notified on April 12, 1909, in writing, that the note
would be due on April 18, 1909, and "to prevent lapse

of policy should be paid on or before that date;" also, that "the acceptance of any premium by the company after it becomes due . . . . is not to be construed as a waiver of the conditions of the policy as to future payments, nor as establishing a course of dealing between the company and the holder of the policy." It is to be borne in mind, as was said in Holly v. Metropolitan Life Ins. Co., 105 N. Y. 437, and Seeley v. Union Central Life Ins. Co., 10 Pa. Superior Ct. 270, that, while courts do not favor forfeitures, they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default. Enough has been said to show that the default of the insured in the present case was not excused by a previous course of dealing.

Keeping in view the terms of the note, application for insurance, and policy, which are above referred to, it is clear that the mere retention of the premium note after default in payment does not furnish ground for presuming or inferring a waiver of the conditions upon which it was given and accepted. Even the Kentucky cases, which go as far as any in that direction, do not go to the full extent, for in the case of Union Central Life Ins. Co. v. Spinks, 26 Kentucky L. R. 1205, s. c., 69 L. R. A. 264, where the earlier cases are cited, it was conceded by the court that the company may retain the note as evidence of its nonpayment. This, in our judgment, is all that can be inferred from the mere retention of the note. But it appears by the receipt of the local agent, dated April 26, 1909, that there was paid to him "five dollars as part payment on his life insurance policy." This money was remitted by the agent to the company, and the following indorsement was made on the note:

"Extended sixty days.   $5.00.   May 10, 1909.

" Paid Four and 75-100 dollars and 25c int."

On June 7, 1909, the company gave the insured

written notice that his premium note would be due on June 18, 1909, "and to prevent lapse of policy should be paid on or before that date." If the insured had died between the time of the above payment and June 18, the company's indorsement on the note and the notice would be evidence against the company that the time for payment had been extended to the latter date. But the insured did not die until December following, and it is contended by appellant's counsel that he had no knowledge of the indorsement on the note and therefore ought not to be affected by it. Let this be granted, still the plaintiff proved no agreement for any extension of time whatever, and the company's notice of June 7 plainly informed him that the company claimed that there had been no extension beyond June 18. This being so, the plaintiff was not in position to ask the jury to infer that there was an extension beyond June 18. The insured had no right to act on the assumption that the mere payment of $5.00 to the agent had extended the time for payment of his premium indefinitely, in the face of the notice of June 7 and of the provision of the policy that agents "have no power to waive, alter, change or modify any of the conditions of this policy contract."

The testimony as to what occurred after June 18, 1909, remains to be considered. Mrs. Rhodes testified that in September Mr. Lynn, the agent through whom the insurance was effected, called at their home and said to her, her husband being absent: "I have a note which the company is dissatisfied with, and I want Mr. Rhodes to fix it up." She says he also asked her whether she could fix it up, that is, pay it. To which she replied: "No, I could not now. Had you come to me first I could have paid it. After Mr. Rhodes comes home I will pay it,—fix it up." She also testified to the contents of a lost letter received by her husband in November, in which Mr. Lynn said: "The company is dissatisfied, and you will have to fix it up." Being asked as to 'the contents of the company's letter to

Mr. Lynn, which was inclosed in his letter to Mr. Rhodes, she testified: "They just notified Mr. Lynn, and he sent that notice; they notified him that they were dissatisfied. . . . They were dissatisfied with that note he had given. . . . Because they said it was not paid promptly." Reference is also made by appellant's counsel to the company's letter written after proofs of death were furnished, as containing pertinent admissions. The material part of it is as follows: "The policy was issued March 18, 1907. The premium due 1908 was fully paid and receipt issued. For the 1909 premium the insured used coupon of $10.44, and gave his note for the net of $41.76. On May 10, 1909, $4.75 was paid by the insured on the principal and 25c paid on interest, and the balance of the note, $37.01, extended to June 18, 1909. No further payment was ever made on account of this note, and after repeated efforts to have the same paid and policy reinstated, the note was returned to this office and is now in our possession, same being unpaid, and by reason of this nonpayment, policy was lapsed."

It is argued correctly, that the foregoing evidence would sustain a finding by the jury that even after June 18 the company made repeated efforts, that is, repeated demands and requests, to have the note paid. But we are unable to agree with counsel that such finding would support the further inference that the company waived its right to insist on the conditions expressed in the note, application, and policy, or that the insured had just and reasonable ground to believe they would not be insisted on. It is true, there are some cases in other jurisdictions which have gone so far as to hold that unsuccessful demand by the insurer that an insurance premium or a note given therefor be paid, is sufficient to waive the provision that the policy should be avoided for its nonpayment. But there are many other well-considered cases which hold that such unsuccessful demand will not waive the forfeiture of the

policy.   The cases pro and con are cited in the note to
Iles, Admr., v. Mut. Reserve Life Ins. Co., 18 L. R. A.
(N. S.) 902.   They are too numerous to be reviewed here.
But after deliberate consideration our judgment is that
the latter is the better view.   The insured was not put
in any less advantageous position by these demands
and requests for payment.   No waiver or promise to
waive was expressed, and the strongest inference he was
justified in drawing from what was expressed was that,
if he paid, the policy would be reinstated.   He had no
just and reasonable ground for inferring that it had been
reinstated and would be in full force until the next
annual premium fell due.

Comment is made on the omission to prove that he
was notified that a forfeiture had taken place, and on
the omission from the conditions of an express provi-
sion that the policy should become void upon nonpay-
ment of the note at maturity.   But neither of these
things was essential.   To agree that all liability under
the policy shall cease or that the policy shall cease and
determine, is quite as effective as to agree that the policy
shall become void.   Where either of these forms of
expression is used, no affirmative action on the part of
the company is necessary to give effect to the act or
omission which it is agreed shall terminate its liability.
This question was quite elaborately considered in Iowa
Life Ins. Co. v. Lewis, 187 U. S. 335, and the doctrine there
enunciated is recognized in some of the other cases
above cited.   The principle which we think applicable
to this case is thus expressed in Lantz v. Vermont Life
Ins. Co., 139 Pa. 546: "The consequence of a default in the
payment of the premium is defined in the policy itself.
It declares that, if not paid on the days named and in
the lifetime of the insured, the policy should 'cease and
determine.'   By this I understand that it is suspended;
it ceases to bind the company and to protect the as-
sured, and this without any act or declaration on the
part of the former.   It does not require a formal for-

feiture. This term is often used, and I think, inaccurately, in such cases. Nor, is the policy void in the general sense of that term. It is voidable at the election of the company, and that election can be exercised without notice to the assured, for the reason that the policy itself is notice that his rights cease with the nonpayment of the premium. As to him it is a dead policy. It is true it may be restored to life, by the subsequent payment of the premium and its acceptance by the company. This, however, is a new contract by which the company agrees in consideration of the premium to continue in force a policy which had previously expired; in other words, it is a new assurance, though under the former policy: Want v. Blunt, 12 East, 183."

There remains to be noticed the letter of January 13, 1910, which was received after the death of the insured, in which the reinstatement department of the company said: "Don't delay your intention of re-instating your policy. A sudden change of health might render it impossible for you to pass the medical examination. You will never be able to buy insurance at so low a cost as you can revive the policy you have just lapsed." The insured died on December 20 preceding, and we cannot agree with counsel that the words, "the policy you have just lapsed," amounted to an admission by the company that it was in force at his death.

The judgment is affirmed.